```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 08/25/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DAYS INNS WORLDWIDE, INC.,                  :

                        Plaintiff,        :       **REPORT AND**
                                      **RECOMMENDATION**
                                        **TO THE HONORABLE**
          -against-            :       **J. PAUL OETKEN**[*]

HOSPITALITY CORP.                           :       13cv8941-JPO-FM
OF THE CAROLINAS, et ano,

                                        :

                    Defendants.
------------------------------------------------------------x

**FRANK MAAS,** United States Magistrate Judge.

        In this action, plaintiff Days Inns Worldwide, Inc. ("DIW") seeks to recover damages against defendants Hospitality Corporation of the Carolinas ("Hospitality Corp.") and Nalin Patel ("Patel") (together, the "Defendants") alleged to arise out of Hospitality Corp.'s breach of a license agreement for the operation of a hotel in Charlotte, North Carolina ("License Agreement"). On October 20, 2014, after the Defendants failed to respond to an order to show cause, Your Honor granted DIW's motion for a default judgment and referred the matter to me to conduct a damages inquest. (ECF No. 15). Thereafter, by order dated December 11, 2014, I directed that DIW serve and file its inquest papers on or before February 13, 2015, and that the Defendants respond on or before February, 27, 2015. (ECF No. 17). Although DIW complied, (see ECF No. 18),

---

[*] Lelia James, a student at the City University of New York School of Law, provided substantial assistance in the preparation of this Report and Recommendation.

the Defendants have not submitted any opposition papers or had any other contact with the Court.

As set forth below, I recommend that DIW be awarded: (a) $114,750.08 in contract damages; (b) prejudgment interest on that amount calculated at the rate of nine percent per annum from the midpoint between May 1, 2009, and the date that judgment is entered; (c) $150,000 in liquidated damages; and (d) prejudgment interest on that amount, at the same nine percent rate, from July 30, 2011, through the date judgment is entered.

I.     Standard of Review

In light of the Defendants' default, DIW's well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998). Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim though the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here both requirements have been met.

II.     Relevant Facts[1]

DIW's Complaint and inquest papers establish as follows:

DIW is a Delaware corporation with its principal place of business in New Jersey.  (Compl. ¶ 1).  Hospitality Corp. is a North Carolina corporation with its principal place of business in North Carolina.  (Id. ¶ 2).  Nalin Patel – a principal of Hospitality Corp. – is a citizen of North Carolina.  (Id. ¶ 3).  The Court therefore has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

On December 13, 1993, DIW and Hospitality Corp. entered into the License Agreement which granted Hospitality Corp. a fifteen-year license to operate a one-hundred room Days Inn in Charlotte, North Carolina.  (Fenimore Aff. ¶¶ 6-7; Ex. A ("License Agreement") §§ 2, 6 & Schedules A, B).  On December 9, 2008, the parties agreed to extend the term of the License Agreement through December 15, 2014.  (Ex. C).  Nalin Patel, Vice President of Hospitality Corp., served as guarantor for the extension of the License Agreement.  (Id. at 3; see Ex. D).

The License Agreement required the Defendants to make monthly payments to DIW consisting of royalties and reservation system user fees (collectively, the "Recurring Fees"), as well as other regular payments such as marketing and training fees (together with the Recurring Fees, the "Contract Obligations").  (License Agreement §§ 8, 11-12).  The License Agreement further provided that interest would accrue on any

---

[1]     The following facts are derived from the complaint, (ECF No. 1 ("Complaint" or ("Compl.")), DIW's inquest memorandum (ECF No. 18 ("Pl.'s Mem.")), the affidavit of Suzanne Fenimore (ECF No. 18 ("Fenimore Aff.")), and the exhibits attached thereto ("Ex.").

past due amount "at the rate of the lesser of 1.5% per month or the maximum rate permitted by applicable law from the due date of any payment." (Id. § 8(c)).

Under Section 19(a) of the License Agreement, DIW had the right to terminate the License Agreement if Hospitality Corp. "fail[ed] to pay its debts . . . as they [became] due." (Id. § 19(a)(vii)). In that event, DIW further was entitled to recover liquidated damages in an amount equal to the greater of "the sum of accrued Recurring Fees during the immediately preceding [twenty-four] full calendar months," or "the product of $2,000.00 multiplied by the number of guest rooms in the [f]acility," but the amount resulting from either calculation could not exceed $150,000. (Id. §§ 20(a), 28(f)).

Finally, the License Agreement provided that it was to be construed in accordance with the substantive law of New York. (Id. § 27).

By April 2009, Hospitality Corp. had stopped making its required monthly payments to DIW. (Fenimore Aff. ¶ 18; see Ex. I ("Itemized Account Statement")). Over the next several years, DIW sent a series of letters to Hospitality Corp. with a running tally of the past due amounts owed to DIW. (Fenimore Aff. ¶¶ 19-22; see Exs. E-H). Each letter was accompanied by an itemized statement detailing the fees that were past due. (See Exs. E-H). Finally, on June 29, 2011, DIW sent Hospitality Corp. a notice of termination. (See Ex. H). The cover letter referenced attached itemized account statements which indicated that DIW was owed $111,747.70, exclusive of accrued interest. (Id. at 15). After the termination notice was sent, the Defendants failed to make any further payments before this lawsuit was filed. (Fenimore Aff. ¶ 39).

III.   Discussion

    A.   Damages

        1.   Contract Obligations

The damages that DIW characterizes as unpaid "Recurring Rees" (see Pl.'s Mem. at 1-2), actually appear to be a combination of Recurring Fees, expressly defined by the License Agreement as royalties and reservation fees ( License Agreement § 8(a)), and other fees contemplated by the License Agreement.[2]  DIW contends that the total unpaid balance of all of those Contract Obligations for the period from April 2009 through July 2011 is $199,868.41, inclusive of prejudgment interest.  (Pl.'s Mem. at 2).

The Itemized Account Statement prepared by DIW for purposes of this inquest indicates that through May 2011, the Defendants' account was past due in the amount of $111,829.20, inclusive of taxes but <u>exclusive</u> of accrued interest.  (Itemized Account Statement at 1-7).  This is the same total reflected in the itemized statements that had been sent to Hospitality Corp. over time, as well as DIW's June 2011 termination letter.  By failing to interpose timely objections to those prior statements, the Defendants have impliedly conceded the accuracy of DIW's calculations.  See <u>Microban Products Co. v. API Indus., Inc.</u>, No. 14 Civ. 41 (KPF), 2014 WL 1856471, at *16 (S.D.N.Y. May 8, 2014) (plaintiff may prevail on an account stated claim under New York law when the

---

[2]   Indeed, DIW has submitted an exhibit purporting to reflect its "Recurring Fees" which lists a total smaller than the one set forth in its Itemized Account Statement.  (<u>See</u> Ex. J).

debtor receives a statement of account and "keeps it without objecting to it within a reasonable time").

The Itemized Account Statement also reflects that DIW is owed an additional $2,920.88, inclusive of taxes but exclusive of interest, for June 2011. (Itemized Account Statement at 8). Although the Defendants never had an opportunity to contest this aspect of DIW's claim during the course of their business relationship, DIW's calculations for June 2011, are based on "nightly transmissions received from Hospitality Corp.'s property management system" reflecting actual daily revenue. (Fenimore Aff. ¶ 25). There consequently is no reason to doubt their accuracy.

Finally, DIW seeks $238 for "fees" attributable to July 2011. (Itemized Account Statement at 8). The License Agreement, however, was terminated by DIW on June 29, 2011. Since DIW has failed to explain why it believes it is entitled to this additional amount, I recommend that it be disallowed.[3]

2.  Liquidated Damages

Next, DIW seeks to recover liquidated damages in the amount of $150,000. (Pl.'s Mem. at 2-4). Pursuant to the License Agreement, DIW is entitled to liquidated

---

[3] The paperwork supporting DIW's accounting contains two schedules which, at first blush, seem inconsistent. Specifically, the account statement attached to DIW's termination letter states that DIW is owed $112,051.20, exclusive of accrued interest, while the subsequently-prepared Itemized Account Statement indicates that DIW is owed $114,988.08, exclusive of accrued interest. (Compare Ex. H, with Itemized Account Statement at 8). This apparent discrepancy is easily reconciled because the Itemized Account Statement includes the amount owed for June 2011, as well as the additional $238 allegedly owed for July 2011, while the statement attached to the termination letter does not.

damages in an amount equal to the greater of "the sum of accrued Recurring Fees during the immediately preceding [twenty-four] full calendar months" or "the product of $2,000.00 multiplied by the number of guest rooms in the [f]acility." (License Agreement § 20(a)).  A separate provision of the License Agreement provides, however, that DIW's liquidated damages may not exceed $150,000.  (Id. § 28(f)).

"A liquidated damages clause generally will be upheld by a court, unless the liquidated amount is a penalty because it is plainly or grossly disproportionate to the probable loss anticipated when the contract was executed."  Wechsler v. Hunt Health Sys., Ltd., 330 F. Supp. 2d 383, 413 (S.D.N.Y. 2004) (quoting United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 740 (2d Cir. 1989)).  A sum specified as liquidated damages does not constitute such a penalty if it "bear[s] a reasonable proportion to the probable loss and the amount of actual loss is incapable or difficult of precise estimation."  Id.

Here, the parties agreed at the outset of their relationship that the "actual damages incurred" by DIW would be "difficult or impossible to ascertain" in the event DIW terminated the License Agreement.  (License Agreement § 20(a)).  Indeed, as DIW explains, the value of any future Recurring Fees lost in such a circumstance would depend on many variables, including "the national, regional and local economy, the irregular travel patterns of commercial and leisure travel[er]s, the entry o[r] withdrawal of competitors in the market, and the effort, skill and resources of the licensee."  (Fenimore Aff. ¶ 30).  In these circumstances, it was reasonable for the parties to agree that DWI's

7

liquidated damages would be based on the greater of two years' Recurring Fees or a fixed sum of $2,000 per room (coupled with a reasonable cap on those damages) – especially since the License Agreement had more than three years to run when it was terminated due to Hospitality Corp.'s breaches.  Cf. Ramada Franchise Sys., Inc. v. Cusack Dev., Inc., No. 96 Civ. 8085 (MGC), 1999 WL 165702, at *8 (S.D.N.Y. Mar. 24, 1999) ("[T]he use of a two-year period to compute future damages is reasonable. According to [plaintiff], a hotel franchise company requires two years on average to replace a lost franchisee in a given market.").

The facility operated by Hospitality Corp. had one hundred rooms.  (See License Agreement Schedule B).  Accordingly, $200,000 (the product of $2,000 multiplied by the total number of guest rooms) is greater than the $75,402.63 that DIW identifies as the sum of the accrued Recurring Fees for the twenty-four month period preceding its termination of the License Agreement.  (See Ex. J).  However, because the parties agreed that DIW's liquidated damages could not exceed $150,000, DIW is entitled to only $150,000 in liquidated damages.  As noted previously, this amount is not grossly disproportional to the probable loss anticipated by the parties when the License Agreement was executed.

### 3. Prejudgment Interest

Finally, DIW contends that it is entitled to recover interest at the rate of 1.5 percent per month on the unpaid Contract Obligations from May 1, 2009, and on its

liquidated damages from July 29, 2011.  (See Fenimore Aff. ¶ 37; Itemized Account Statement at 1; Ex. K).

Under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right."  United States Naval Inst. v. Charter Communications, Inc., 936 F.2d 692, 698 (2d Cir. 1991).  In New York, the statutory rate for prejudgment interest recovered "upon a sum awarded because of a breach of performance of a contract," is ordinarily nine percent per year.  N.Y. C.P.L.R. §§ 5001(a), 5004.  However, "[i]f the contract provides a rate at which interest is to be calculated, then the contractual rate, rather than the statutory rate of nine percent per year as set forth in [C.P.L.R § 5004], governs."  Nuera Communications v. Telron Communications USA, Inc., 00 Civ. 9167 (RMB) (FM), 2002 WL 31778796 at *3 (S.D.N.Y Nov. 5, 2002).

The License Agreement provides that the interest rate on any past-due unpaid amount shall be "the lesser of 1.5% per month [i.e., eighteen per cent per annum] or the maximum rate permitted by applicable law."  (Id. § 8(c)) (emphasis added).  DIW maintains that the first alternative is applicable here because New York law permits the parties to contract for a rate higher than the statutory rate.  (See Pl.'s Mem. at 4).  There are at least two reasons why this argument fails.  First, to the extent that DIW maintains that the "sky is the limit," there is no stautory "maximum rate" to which the eighteen percent per annum rate could be compared.  Second, even if there were such a rate, the term "maximum rate permitted by applicable law" could as easily refer to the nine percent

statutory rate. Since the License Agreement is ambiguous in this regard, and there is no extrinsic evidence to shed light on the parties' intent, this ambiguity should be construed against DIW, which clearly drafted the form License Agreement that Hospitality Corp. signed. See Rubenstein v. Advanced Equities, Inc., No. 13 Civ. 1502 (PGG), 2014 WL 1325738, at *12 (S.D.N.Y. Mar. 31, 2015). The Court should therefore construe the second alternative in the contractual formula to be a reference to C.P.L.R. § 5004, and award prejudgment interest at the lesser rate of nine percent per annum.[4]

Having resolved the interest rate issue, the remaining question relates to the dates that should be used to calculate prejudgment interest. The amount of the Defendants' Contract Obligations, of course, increased each month during the period before the License Agreement was terminated, and it will continue to grow until judgment is entered. Although the Court (and DIW) could engage in the laborious exercise of calculating the interest due each month through the date that judgment is entered, it is much more practical to run interest from the approximate midpoint between May 1, 2009 (when the first payment was missed) and the date that judgment ultimately is entered. See, e.g., Manzo v. Sovereign Motor Cars, Ltd., No. 08-CV-1229 (JG) (SMG), 2010 WL 1930237, at *12 n.21 (E.D.N.Y. May 11, 2010) ("Utilizing the midpoint date is a practical method of accounting for the fact that [the plaintiff's] damages accrued over a period of time . . . ."); see also Angamarca v. Pita Grill 7 Inc., No. 11 Civ. 7777 (JGK)

---

[4] I note that this was the conclusion reached in Days Inn Worldwide, Inc. v. Amar Hotels, Inc., No. 05 Civ.10100 (KMW) (KNF), 2008 WL 2485407, at *6 (S.D.N.Y. June 18, 2008), a case involving DIW which is not cited by its present counsel.

(JLC), 2012 WL 3578781, at *9 (S.D.N.Y. Aug. 2, 2012) (Under New York law, "[s]imple pre-judgment interest is calculated from a singular, midpoint date.").

Turning to the issue of liquidated damages, the License Agreement required Hospitality Corp. to make its payment within thirty days after DIW terminated the License Agreement. (See License Agreement § 20(a)). Moreover, DIW's liquidated damages are a fixed amount. DIW should therefore be awarded prejudgment interest on the sum of $150,000. calculated at the rate of nine percent per annum, from July 30, 2011, through the date of judgment.

IV.     Guarantor

Patel guaranteed all of Hospitality Corp.'s obligations under the License Agreement and agreed to make DIW whole upon any default by Hospitality Corp. (Compl. ¶¶ 17-18; Exs. C, D). Accordingly, an judgment for sums due and owing should be entered jointly and severally against Patel.

V.      Conclusion

For the reasons set forth above, I recommend that DIW be awarded judgment against both the Defendants for the following amounts: (a) $114,750.08 in unpaid Contract Obligations; (b) prejudgment interest on that amount calculated at the rate of nine percent per annum from the midpoint between May 1, 2009, and the date when judgment is entered; (c) $150,000 in liquidated damages; and (d) prejudgment interest on that amount, at the same nine percent rate, from July 30, 2011, through the date judgment is entered.

VI.     Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Oetken. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         August 25, 2015

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Plaintiff's Counsel (via ECF)